Ronald IDLEWINE, Roberta Idlewine, Appellants (Defendants below),

v.

MADISON COUNTY BANK AND TRUST COMPANY, Appellee (Plaintiff below),

and

Clayton P. Rudy and Janet K. Rudy, Appellees (Intervenors below).

No. 2–481A112.

Court of Appeals of Indiana, Second District.

Sept. 27, 1982.

James E. Freeman, Jr., Jonathan R. Builta, Sansberry, Dickmann, Dickmann & Freeman, Anderson, for appellants.

Richard E. Kreegar, Chesterfield, for appellee, Madison County Bank and Trust Co.

Craig B. Campbell, Anderson, for appellees, Clayton P. Rudy and Janet K. Rudy.

SHIELDS, Judge.

Roberta and Ronald Idlewine appeal the trial court's refusal to set aside the default judgments and foreclosure sale in a mortgage foreclosure action against them instituted by the Madison County Bank and Trust Company (Bank).[1] They raise three issues on appeal but, because we find the first issue constitutes reversible error, we do not reach the other issues.[2] *Cowan v. Murphy*, (1975) 165 Ind.App. 566, 333 N.E.2d 802. We reverse on the issue of whether the trial court erred in not declaring the default judgments and the foreclosure sale void because of lack of personal jurisdiction over Roberta Idlewine.

Bank brought suit to foreclose a mortgage held on property owned by the Idlewines as tenants by the entireties.[3] The clerk of the trial court issues a joint summons addressed to Roberta and Donald Idlewine which was sent to the Idlewines by certified mail, Ind.Rules of Procedure, Trial Rule 4.11. It was returned unclaimed. The

---

1. Subsequent to the trial court's denial of the Idlewines' motion, the trial court granted damages to the purchasers of the mortgaged real estate (Intervenors Rudy) occasioned by the Idlewines' "holding over." When Idlewines' timely motion to correct error attacking this judgment was denied by the trial court, they timely filed their Praecipe and petitioned this court for leave to consolidate the two appeals. Their petition was granted and, accordingly, all issues raised by the separate motions are presented in this single cause.

2. Idlewines' other issues are: whether the trial court's award of damages to intervenors Clayton and Janet Rudy was contrary to law and based upon insufficient evidence, and whether the proceedings below constitute "cumulative error" such that a new trial is necessary.

3. Later, the purchasers of the property at a foreclosure sale, Clayton and Janet Rudy, intervened to obtain possession of the property and damages for the Idlewines' retention of the property during the pendency of this suit. The trial court granted them a writ of assistance and damages.

clerk then substituted service of an "alias joint summons" to effect notice to the parties. One copy of the joint summons was delivered to the Idlewines' residence, Ind. Rules of Procedure, T.R. 4.1(A)(3), and one copy of the joint summons was sent by first class mail to the Idlewines' residence, T.R. 4.1(B). Ronald received both the summons delivered to the residence and the summons sent by first class mail. Affidavits disclosed the summonses were concealed from Roberta.[4] A default judgment and supplemental default judgment (for taxes) were entered against the Idlewines and a foreclosure sale of the property was ordered. The property was sold to the Rudys for $160,000.

██ It is a fundamental tenet of law that a trial court's judgments[5] cannot be binding on one over whom the trial court has not acquired personal jurisdiction. Personal jurisdiction is gained over a person who "is served with summons or enters an appearance, or who is subject to the power of the court under any other law." Ind.Rules of Procedure, Trial Rule 4(A). Without the requisite notice a summons or an appearance provides, the court lacks jurisdiction to enter and enforce judgments over the person in question.

We agree with the Idlewines' analysis that the issue is the sufficiency of the service of summons, *i.e.*, whether one copy for two persons residing at the same address is sufficient service of summons to both persons, and not, as appellees contend, the sufficiency of the form of summons.[6]

The specific issue before us has not been addressed by our courts since 1854. Then the supreme court held there must be a summons for each person residing at the same residence because the law required each person named as a defendant in a suit to be notified by service of summons. *Hutchens v. Latimer*, (1854) 5 Ind. 67. The

law regarding service of summons in 1854 is substantially similar to the law today.

The law, in 1854, provided:

"SEC. XXXV. The summons shall be served, either personally on the defendant, or by leaving a copy thereof at his usual or last place of residence. An acknowledgement on the back of the process, or the voluntary appearance of a defendant, is equivalent to' service." [footnotes omitted.]

Act of June 18, 1852, art. IV § 35, *reprinted in* Stat. of Ind. vol. II at 60–61 (Bingham 1870). This is similar to T.R. 4.1 which provides:

"(A) *In general.* Service may be made upon an individual, or an individual acting in a representative capacity, by:

(1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or

(2) delivering a copy of the summons and complaint to him personally; or

(3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode.

(4) serving his agent as provided by rule, statute or valid agreement.

(B) *Copy service to be followed with mail.* Whenever service is made under clause (3) or (4) of subdivision (A), the person making the service also shall send by first class mail, a copy of the summons without the complaint to the last known address of the person being served, and this fact shall be shown upon the return.

Amended Jan. 1, 1971." (Emphasis supplied.)

T.R. 4.1. *Compare* Act of June 18, 1852, art. IV, § 37, *reprinted in* Stat. of Ind. vol.

---

**4.** Counter affidavits were not produced contesting the Idlewines' assertion Roberta did not receive a copy of the summons.

**5.** Here, the judgments include the two default judgments, the foreclosure sale order, the writ of assistance, and the judgment for damages.

**6.** The jurisdiction of the trial court over Ronald was not contested.

II at 63 (Bingham 1870) *with* T.R. 4.15(F) (similar rules dealing with the cure of defects in a summons).

■ We find *Hutchens* is controlling precedent. Without an appearance, personal jurisdiction over a person may not be acquired unless and until a copy of the summons is properly served upon that person. One copy of a joint summons delivered to a residence where two parties to the suit reside does not constitute proper service.

A similar result was reached in *Chaney v. Reddin,* (1949) 201 Okl. 264, 205 P.2d 310, and in *Doyle v. Jorgensen,* (1966) 82 Nev. 196, 414 P.2d 707. In *Chaney* the Court stated:

> "We are of opinion (sic) that where there are two or more defendants, although they may be members of the same family, and residing in the same abode, valid service of summons upon said defendants by delivery thereof requires that a copy of the summons for each defendant be left with the member of his family."

> . . . .

> "Statutes prescribing the manner of service of summons are mandatory, and must be strictly complied with to vest the court with jurisdiction. (citations omitted) Each defendant, whether there be one or many, and whether they be members of the same family or strangers, must be served as required by the statute. And the statute plainly sets forth how a defendant must be served in order to vest the court with jurisdiction. Where several copies of the summons are left with a member of a family, one copy being left for each defendant, the law presumes that the member with whom they are left will deliver a copy to each defendant sued. (citation omitted) But such presumption cannot be indulged where only one copy is left for several defendants."

*Chaney,* 205 P.2d at 312, 313.

■ In *Doyle,* the Nevada Supreme Court said:

> "Each defendant must be served a copy of the summons, even though both may share the same place of abode and may even be members of the same family."

*Doyle,* 414 P.2d at 710. *Accord Clinton Co. v. Eggleston,* (1979) 78 Ill.App.3d 552, 33 Ill.Dec. 850, 853, 397 N.E.2d 183, 186 ("never having been served, . . . [t]he default judgment entered against her was void.") Because Roberta was not served with summons, the trial court did not acquire personal jurisdiction over her.

■ Any arguable harshness in applying *Hutchens* is vitiated by the fact that the mortgage was executed by both Ronald and Roberta and had to be so executed to constitute an enforceable obligation. That is, the tenancy by the entirety is not such an "entity" that one co-tenant can, by that co-tenancy alone, bind, represent, or otherwise obligate the tenancy by the entirety.[7] That "entity," to the extent it exists, is recognized only as a form of ownership of real estate. In this case, it is real estate so owned which *secured* the mortgage and rendered the *individuals* constituting the co-tenancy indispensable parties to the action.

We further hold the provisions of T.R. 4.15(F) do not aid the Bank. The basic due process requirements for notice have been incorporated within the provisions of that rule. It provides, in part:

> "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him . . ."

T.R. 4.15(F).

However, the saving effect of T.R. 4.15(F) is inapplicable if

> "there has been absolutely no service upon an agent or person upon whom the statute authorizes service in the particular circumstances . . . for that section [the predecessor statute of T.R. 4.15(F)] presupposes that there has been at least some kind of service upon the party."

---

7. *See infra* n. 6.

*Southern Indiana R. Co. v. Indianapolis & L. R. Co.,* (1907) 168 Ind. 360, 364, 81 N.E. 65, 66. *See* 1 Harvey, *Indiana Practice* § 4.15(F), at 415 (1969).

■ In this case, we find, as a matter of law, Ronald was neither Roberta's agent for service nor a person authorized by the rule to receive notice.

T.R. 4.7 allows service upon an agent who has been designated by statute or valid agreement to receive service for the person being served. Statutory appointment is not in issue. Further, we hold Ronald was not Roberta's agent for receipt of service of process. Neither Roberta's guarantee, nor the promissory note, nor the mortgage contains any agreement by Roberta appointing Ronald her agent for receipt of service.

■ The relationship of husband and wife does not itself create agency, *Moehlenkamp v. Shatz,* (1979) Ind.App., 396 N.E.2d 433, although it is a circumstance which may be considered along with other facts and circumstances in determining whether there is an implied agency. However, to establish the relationship of agency the evidence must be "clear and satisfactory, and sufficiently strong to explain and remove [the] equivocal character" of the marital relationship. *Bayes v. Isenberg,* (1981) Ind. App., 429 N.E.2d 654, 659.

Bank argues evidence that Roberta left mail from the Bank addressed to Ronald and Roberta unopened and let mail accumulate in the mailbox; that Ronald paid the mortgage account by checks on *his* account; that she did not inquire how much money he had or how things were going financially or whether he was paying the mortgage and the real estate taxes; and that she directed phone inquiries to Ronald is sufficient for the trial court to find that Roberta

> "had made her husband her agent with regard to the control of the property, and didn't want to know what was happening."

Appellees' brief at 19.

We disagree. We find as a matter of law the evidence is not clear and satisfactory and sufficiently strong Roberta did anything other than acquiesce in Ronald's dealing with the management of the finances pertaining to the real estate. Nor is that the issue. The issue is whether she made him her agent to receive service of summons for a lawsuit within the meaning of T.R. 4.7 based, not upon *his* control of the property, but upon *her* interest in the real estate as a co-tenant. We hold she did not.

Furthermore, even assuming an implied agency, there remains the insurmountable problem only one summons was served upon Ronald. A second copy was not served upon Ronald as the agent of Roberta. *See* T.R. 4(B).

T.R. 4.1 requires service upon an individual by sending that individual a copy of the summons and complaint by registered or certified mail, by personal delivery, by leaving a copy at his dwelling or place of abode, or by serving his agent. In addition, when the service is by leaving upon an agent, a copy of the summons must be mailed to the *person* being served. The import of this rule and of T.R. 4(B) is *each* defendant shall be served. T.R. 4(B) provides that the person seeking service shall furnish the clerk "as many copies of the complaint and summons as are necessary." A comparable provision of the Hawaii Rules of Civil Procedure, H.R.C.P., Rule 4(d), has been interpreted as requiring one copy for each defendant even though they have a common agent. *Tropic Builders, Ltd. v. Naval Ammunition Depot Lualualei Quarters, Inc.,* (1965) 48 Haw. 306, 402 P.2d 440, 446. Again, this interpretation is based upon common sense. It has the obvious purpose of enabling the agent to forward a copy to the person, natural or otherwise, upon whom service is sought. Here, with only his copy of the complaint and summons served upon him as a party, Ronald, acting as Roberta's assumed agent, was unable to give Roberta a copy of the summons and complaint.

■ The judgments entered against Roberta in this action must be declared

void.[8] Because the defect involved is jurisdictional, Roberta need not present a meritorious defense to have these judgments set aside. *Keiling v. McIntire,* (1980) Ind.App., 408 N.E.2d 565. Nor does her silence at the foreclosure sale preclude Roberta from seeking to vacate the default judgments as void. Her silence does not change the fact void judgments are nullities which afford no protection to people acting under them, *i.e.,* here the Rudys who purchased the property at the foreclosure sale. *Goodell v. Starr,* (1890) 127 Ind. 198, 26 N.E. 793.

In regard to the Rudys' other contentions, we point out the lack of service was obvious from the face of the sheriff's return. The return showed one summons was served on two people. The Rudys purchased with notice of defective service. *See Sicanoff v. Miller,* (1960) 131 Ind.App. 535, 167 N.E.2d 481. Further, there is no merit in the argument lack of tender is a bar to Roberta's relief from the foreclosure sale. This is not an action in equity, *see Shannon v. Hay,* (1886) 106 Ind. 589, 7 N.E. 376, and the foreclosure sale resulted from void judgments which are complete legal nullities from which the Rudys cannot derive protection for their purchase.

Judgment reversed.

SULLIVAN, J., and MILLER, J., sitting by designation, concur.

---

**8.** Defective service upon Roberta also invalidates the foreclosure aspect of the judgments against Ronald as well as the foreclosure sale order and damage judgment because the property in question was held by the Idlewines as tenants by the entireties. No interest in tenancy by the entireties property can be conveyed, voluntarily or involuntarily, by only one spouse. *Anuszkiewicz v. Anuszkiewicz,* (1977) 172 Ind.App. 279, 360 N.E.2d 230. Neither may such property be seized or levied upon for debt repayment of either spouse. *Myler v. Myler,* (1965) 137 Ind.App. 605, 210 N.E.2d 446. *See also Bayes v. Isenberg,* (1981) Ind.App., 429 N.E.2d 654.